# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES SHEA, in his official capacity as Director of Public Safety for the City of Jersey City, and THE CITY OF JERSEY CITY, | Hon. Julien X. Neals, U.S.D.J. Hon. José R. Almonte, U.S.M.J. |
| Plaintiffs, | Docket No. 2:23-cv-21196 |
| v. | **CIVIL ACTION** |
| THE STATE OF NEW JERSEY, MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey, ALLISON CHRIS MYERS, in her official capacity as Chair & Chief Executive Officer of the New Jersey Civil Service Commission, THE NEW JERSEY CIVIL SERVICE COMMISSION, NORHAN MANSOUR, OMAR POLANCO, MACKENZIE REILLY, MONTAVIOUS PATTEN, AND RICHIE LOPEZ, | **(ELECTRONICALLY FILED)** |
| Defendants, | |
| and | |
| JERSEY CITY POLICE BENEVOLENT ASSOCIATION, | |
| Intervenor-Defendant. | |

## REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS

Michael L. Zuckerman
 *Deputy Solicitor General*

Emily M. Bisnauth
Patrick Jhoo
Liza B. Fleming
 *Deputy Attorneys General*

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625
Phone: (609) 789-8684
Email: michael.zuckerman@njoag.gov

*Attorney for State Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ..................................................................1

ARGUMENT ...............................................................................................2

   I.    PLAINTIFFS HAVE ONLY COMPOUNDED THEIR
       JURISDICTIONAL DEFECTS. .................................................2

      A. If Plaintiffs Do Not Provide Firearms, They Have No Standing As To
         Firearms. ............................................................................3

      B. The Attorney General Is Not A Proper Defendant, And Naming The
         CSC Chair Alone Is Insufficient. ...................................4

  II.    PLAINTIFFS CANNOT STATE A VALID PREEMPTION CLAIM........6

  III.   IN THE ALTERNATIVE, ABSTENTION IS PROPER. ..........................12

CONCLUSION ..........................................................................................15

CERTIFICATE OF SERVICE .................................................................16

i

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Am. Auto. Ins. Co. v. Murray*,
   658 F.3d 311 (3d Cir. 2011)..................................................................6

*Amtrak v Pa. Pub. Util. Comm'n*,
   342 F.3d 242 (3d Cir. 2003)..................................................................5

*Bedoya v. Am. Eagle Express Inc.*,
   914 F.3d 812 (3d Cir. 2019)................................................................12

*Brillhart v. Excess Ins. Co.*,
   316 U.S. 491 (1942)............................................................................12

*Byrd v. Shannon*,
   715 F.3d 117 (3d Cir. 2013)..................................................................8

*Dickerson v. New Banner Inst., Inc.*,
   460 U.S. 103 (1983)..............................................................................8

*Elassaad v. Indep. Air, Inc.*,
   613 F.3d 119 (3d Cir. 2010)................................................................10

*Farina v. Nokia Inc.*,
   625 F.3d 97 (3d Cir. 2010)..................................................................11

*Finberg v. Sullivan*,
   634 F.2d 50 (3d Cir. 1980)....................................................................4

*Gary v. Air Grp., Inc.*,
   397 F.3d 183 (3d Cir. 2005)................................................................12

*Gonzalez v. Waterfront Comm'n of the N.Y. Harbor*,
   755 F.3d 176 (3d Cir. 2014)................................................................13

*Ingram v. Experian Info. Sols., Inc.*,
  83 F.4th 231 (3d Cir. 2023) ...................................................................7

*Kanter v. Barella*,
  489 F.3d 170 (3d Cir. 2007)...................................................................12

*Klotz v. Celentano Stadtmauer & Walentowicz LLP*,
  991 F.3d 458 (3d Cir. 2021)...................................................................10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...........................................................................4, 5

*McArdle v. Tronetti*,
  961 F.2d 1083 (3d Cir. 1992)..................................................................3

*N. Sound Capital LLC v. Merck & Co.*,
  938 F.3d 482 (3d Cir. 2019)....................................................................8

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998)................................................................................9

*Reifer v. Westport Ins. Corp.*,
  751 F.3d 129 (3d Cir. 2014).......................................................... 12, 15

*Tafflin v. Levitt*,
  493 U.S. 455 (1990) ................................................................... 14, 15

*United States v. Johnson*,
  529 U.S. 53 (2000)................................................................................7

*United States v. Rose*,
  538 F.3d 175 (3d Cir. 2008)....................................................................8

*Velez Ortiz v. Dep't of Corr.*,
  368 So.3d 33 (Fla. Dist. Ct. App. 2023) ...............................................7

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ........................................................................................12

*Zahl v. Harper*,
  282 F.3d 204 (3d Cir. 2002) ..........................................................................13

**Statutes**

18 U.S.C. § 922 ...............................................................................................1, 6

18 U.S.C. § 925 ........................................................................................ *passim*

18 U.S.C. § 927 .................................................................................................11

N.J. Stat. Ann. § 11A:2-1 ..................................................................................4

N.J. Stat. Ann. § 11A:2-3 ..................................................................................5

N.J. Stat. Ann. § 24:6I-52 ......................................................................... *passim*

N.J. Stat. Ann. § 2C:39-4.1 ..............................................................................11

N.J. Stat. Ann. § 2C:39-7 ..................................................................................11

Pub. L. 115-232, § 809, 132 Stat. 1636 (2018) .................................................8

**Regulations**

27 C.F.R. § 478.134 ................................................................................ 1, 6, 7, 10

27 C.F.R. § 478.141 ..........................................................................................10

**Court Rules**

N.J. Ct. R. 2:2-1 ................................................................................................13

N.J. Ct. R. 2:2-3 ................................................................ 13, 14

**Other Authorities**

Minutes of Regular Meeting of the Civil Service Commission, § B-8
  (Jun. 28, 2023), https://tinyurl.com/mr3ecj3p .........................................................5

## PRELIMINARY STATEMENT

Plaintiffs' opposition, ECF No. 44 (Opp.), to the State Defendants' motion to dismiss, ECF 35-1 (Mot.), offers no meaningful counterargument to the straightforward, plain-text reason Plaintiffs cannot validly state a claim: while the federal Gun Control Act *generally* bars users of illegal drugs from receiving and possessing firearms or ammunition, 18 U.S.C. § 922(d)(3), (g)(3), the same Act lifts those restrictions (and many others) as to firearms and ammunition that are "issued for the use of" a government entity such as Jersey City (the City) and its police department, *see id.* § 925(a)(1) (Section 925(a)(1)). If that were not enough (though it is), the ATF has explained how law-enforcement officers can lawfully obtain their own service weapons for governmental use with a certification from their employer on agency letterhead—detailing a second pathway for the state and federal regimes to operate in harmony. *See* 27 C.F.R. § 478.134(a).

For all those reasons, there is no conflict between the Gun Control Act and the state-law provision, N.J. Stat. Ann. § 24:6I-52 (a)(1) (Section 52(a)(1)), that prohibits Plaintiffs from firing officers solely because those officers tested positive for cannabis (even if their use was purely off-duty). Plaintiffs seek to avoid this simple answer by appealing to abstract notions of the Gun Control Act's general purpose, but those arguments fail under standard principles of statutory interpretation. And with no plausible answer on text, structure, or purpose, Plaintiffs

inject the factual wrinkle (missing from their operative complaint) that they have *chosen* not to follow either pathway that would allow their officers to be lawfully armed for City purposes by neither supplying their officers with firearms directly nor providing a certification on agency letterhead. That yields no cognizable conflict, because conflict preemption arises only from diametrically opposed *legal* regimes, not from the elective actions of parties—indeed, if the rule were otherwise, any party could manufacture conflict preemption through strategic choice. Because there is no conflict preemption, Plaintiffs' sole claim fails as a matter of law.

While none of that is properly before this Court—because, among other things, Plaintiffs' Amended Complaint names only one member of the multimember Civil Service Commission (CSC) for *Ex parte Young* purposes—this Court can simply dismiss with prejudice, as any amendment would be futile. If this Court does not dismiss outright, it should hold this matter in abeyance so that the first-filed, parallel state proceedings—which raise the same preemption issue—can proceed.

## **ARGUMENT**

### I. **PLAINTIFFS HAVE ONLY COMPOUNDED THEIR JURISDICTIONAL DEFECTS.**

Plaintiffs' opposition fails to rehabilitate their complaint's threshold deficiencies and, indeed, only adds new problems. First, assuming Plaintiffs do *not* supply their officers with firearms (a fact they never alleged), that *forecloses* Plaintiffs' standing as to firearms. Second, Plaintiffs misunderstand both

2

justiciability and New Jersey law in averring that this Court can adjudicate the case with the Attorney General, and the CSC Chair alone, as *Ex parte Young* defendants.[1]

## A. If Plaintiffs Do Not Provide Firearms, They Have No Standing As To Firearms.

Plaintiffs' preemption challenge hinges on their allegation that *they* are caught between state and federal law in having to reinstate the Defendant Officers. Their operative complaint suggests that putative conflict might apply to both firearms and ammunition, *e.g.*, ECF No. 24 (Am. Compl.) ¶¶ 36, 60, but Plaintiffs' opposition indicates that it is only ammunition that Plaintiffs actually provide to their officers, Opp. 23; *see also* Am. Compl. ¶¶ 43, 58. Though not properly presented, and formally waived (or forfeited) given Plaintiffs' failure to include it in their Amended Complaint, *see* Mot. 25; *cf. McArdle v. Tronetti*, 961 F.2d 1083, 1089 (3d Cir. 1992) (dismissing complaint where motion to dismiss pointed out deficiencies and plaintiff failed to seek leave to amend), this belated assertion vitiates Plaintiffs' standing as to firearms. After all, even if Plaintiffs were correct (which they are not) that officers who use cannabis off-duty could not lawfully possess service weapons, Plaintiffs would not be the ones putatively violating the law by providing such weapons.[2] And if Plaintiffs cannot claim that they would be violating the law as to firearms, then

---

[1] Plaintiffs rightly accept that the CSC and the State should be dismissed. Opp. 22.

[2] Of course, as explained, Section 925(a)(1) shows why Plaintiffs' theory is erroneous, regardless of whom the officers receive their service weapons from; the firearms are, in any case, "issued for" governmental use. *See, e.g.*, Mot. 26-27.

they have not carried their burden to establish an Article III injury as to firearms. *See* Mot. 26; *see also, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

### B. The Attorney General Is Not A Proper Defendant, And Naming The CSC Chair Alone Is Insufficient.

Plaintiffs challenge the enforcement of Section 52(a)(1) against them, and the entity enforcing that law against them is the CSC—an independent agency, *see* N.J. Stat. Ann. § 11A:2-1—and not the Attorney General. *See* Am. Compl. ¶¶ 38-42. Under both Article III and *Ex parte Young*, the Attorney General is thus not a proper defendant to this lawsuit. And while the CSC Chair is a proper *Ex parte Young* defendant, suing her alone would be insufficient to redress the alleged injury.

Start with the Attorney General. Both *Ex parte Young* and Article III standing principles require some nexus between an action taken by the defendant and the alleged injury. *See Lujan*, 504 U.S. at 560 (for Article III, "injury has to be fairly traceable to the challenged action of the defendant" (cleaned up)); *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980) (en banc) ("Under *Ex Parte Young* the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights."). Plaintiffs claim that being forced to reinstate the Defendant Officers will put Plaintiffs in violation of federal law, and the entity that has ordered that reinstatement is the CSC. Am. Compl. ¶¶ 38-43, 56-62; *see also* Opp. 6, 10, 38. By contrast, there is no allegation that the Attorney General is enforcing Section 52(a)(1) against Plaintiffs, let alone in a way

that is "actual or imminent" and to which Plaintiffs' alleged injury would be "fairly traceable." *See Lujan*, 504 U.S. at 560-61. And while Plaintiffs identify various powers the Attorney General has, various statements he has made about CREAMMA, and the fact that agencies like the CSC often defer to his law-enforcement expertise, *see* Opp. 16-20, they nowhere explain how any of that qualifies as enforcing Section 52(a)(1) against them. Only the CSC has done that.

As for CSC Chair Myers, while State Defendants have never disputed that she is a proper defendant for *Ex parte Young* purposes, suing her alone is constitutionally insufficient. Article III standing requires that a favorable decision would redress the alleged injury. *Lujan*, 504 U.S. at 561. Thus, where a party challenges a decision by a board or commission that acts by vote, naming a single member is not enough. *See, e.g.*, *Amtrak v Pa. Pub. Util. Comm'n*, 342 F.3d 242, 254 (3d Cir. 2003). Here, because the CSC does act by vote, N.J. Stat. Ann. § 11A:2-3, there is no redressability where Plaintiffs have sued only one member, *see* Mot. 16-17.

Plaintiffs try to avoid this result by arguing that the Chair has issued decisions from which she has dissented, Opp. 21, but that misses the point: the problem for redressability purposes is that the CSC can, and sometimes does, execute its decisions without the Chair, *e.g.*, Minutes of Regular Meeting of the Civil Service Commission, § B-8 (Jun. 28, 2023), https://tinyurl.com/mr3ecj3p, so simply enjoining the Chair would not preclude all "future decisions" from issuing, *contra*

Opp. 21. And while Plaintiffs elsewhere chide Defendants for not "imploring this Court to hear this case," Opp. 39, that is not a constitutionally available option. Article III standing is jurisdictional; "parties are not permitted to waive" it. *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 319 n.5 (3d Cir. 2011).

## II.    PLAINTIFFS CANNOT STATE A VALID PREEMPTION CLAIM.

In any event, this Court can provide Plaintiffs the "definitive answer" they seek, Opp. 39, in that it can explain why any amendment would be futile: because Section 925(a)(1) makes this a simple case. *See* Mot. 17-28. Section 925(a)(1)'s plain text exempts firearms and ammunition "issued for the use of" a government entity from nearly all of the Gun Control Act's provisions—including the ones Plaintiffs claim would be violated here. Federal regulations are in accord, spelling out a further way that the Gun Control Act and CREAMMA's Section 52(a)(1) can easily coexist. *See* 27 C.F.R. § 478.134(a). Plaintiffs' opposition offers no answer on the text, instead urging abstract notions of purpose and, failing that, a factual wrinkle (absent from their complaint) that shows at most a manufactured obstacle—which is to say, no legally cognizable obstacle at all. Even if properly presented, Plaintiffs' preemption claim would fail as a matter of law.

Begin with the text. While the Act *generally* restricts the provision/possession of firearms and ammunition to/by cannabis users, *see* 18 U.S.C. § 922(d)(3), (g)(3), it lifts the vast majority of these provisions—including where the recipient/possessor

is a user of illegal drugs—when the firearm and/or ammunition is "issued for the use of" a government entity (which the City obviously is), *see id.* § 925(a)(1). Were that not enough (though it is), the Act singles out a few situations—such as domestic-violence misdemeanors—in which the general restrictions *would* still apply, which underscores "that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 241 (3d Cir. 2023) (quoting *United States v. Johnson*, 529 U.S. 53, 58 (2000)). That makes Congress's intent doubly clear: the Act's general restrictions involving illegal drug use do *not* apply to firearms or ammunition "issued for" government use. Courts have recognized as much,[3] Mot. 20-21, and the ATF has, too, Mot. 22-23—including by clarifying that, where police departments do not provide officers with service weapons directly, those officers "purchasing firearms for official use" need not complete the form that otherwise asks about illegal drug use so long as they have been issued "a certification on agency letterhead," 27 C.F.R. § 478.134(a).

With no answer on the text of federal law or federal regulations, Plaintiffs retreat to abstract purpose, arguing that Section 925 "dates to 1968"—a time (they

---

[3] Plaintiffs rely heavily on the decision of one intermediate Florida appellate court, Opp. 11-12, 38 (citing *Velez Ortiz v. Dep't of Corr.*, 368 So.3d 33 (Fla. Dist. Ct. App. 2023), *review denied*, SC2023-1040, 2024 WL 277862 (Fla. Jan. 25, 2024)), but as State Defendants already pointed out, Mot. 23-24, that decision was analyzing a state law's "good moral character" provision, never considered Section 925(a)(1), and did not engage in any kind of preemption analysis at all.

assert) when decriminalization was not "conceivable," Opp. 24—and quoting the general observation that the Act's overall purpose "was to keep firearms out of the hands of presumptively risky people," Opp. 31 (quoting *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 n.6 (1983)). These arguments fail for three separate reasons. First, Section 925's original enactment date is hardly relevant, particularly when the section itself has been amended multiple times, most recently in 2018. *See* Mot. 6; Pub. L. 115-232, § 809(e)(3), 132 Stat. 1636, 1842 (2018). Second, neither the foreseeability of decriminalization nor the Act's general purposes bear on the question here: the point of Section 925(a)(1) is to *lift* the otherwise-applicable, general restrictions—including restrictions that (all agree) otherwise operate with respect to illegal drug use—for the small (but here, directly on-point) subset of firearms and ammunition "issued for" government use. *See supra* at 6-7; *United States v. Rose*, 538 F.3d 175, 183 (3d Cir. 2008) (applying "the well-settled maxim that specific statutory provisions prevail over more general provisions"). Third, binding precedent makes clear that when plain text and abstract purpose conflict, text wins. *See, e.g.*, *N. Sound Capital LLC v. Merck & Co.*, 938 F.3d 482, 491-92 (3d Cir. 2019) ("Because no legislation pursues its purposes at all costs, courts have no license to disregard clear language based on an intuition that Congress must have intended something broader." (cleaned up)); *Byrd v. Shannon*, 715 F.3d 117, 122-23 (3d Cir. 2013) ("If the language of the statute has a reasonably plain meaning, then

our sole function is to enforce the statute's language." (cleaned up)); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) ("[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."). Plaintiffs' abstract-purpose arguments fail.

As for Plaintiffs' observation that the prospect of law enforcement officers being impaired on-duty poses risks for the public, Opp. 31, 33-34, they simply overlook that Section 52(a)(1) in no way prevents the City from disciplining officers whom the City reasonably suspects of being impaired *on the job*. *See* N.J. Stat. Ann. § 24:6I-52(a)(1) (allowing employers to drug-test employees "upon reasonable suspicion" of employees' on-the-job use, "or upon finding any observable signs of intoxication" related to cannabis use, "or following a work-related accident subject to investigation"). The same point disproves Plaintiffs' misguided suggestion that ruling against them would give police chiefs "sole discretion to allow their friends or relatives who are police officers to use heroin, cocaine, or any other controlled substance while possessing a firearm, including while on duty." Opp. 24. In addition to the fact that Section 925(a)(1) does *not* "allow" officers to use cannabis (it simply allows officers who *do* use cannabis to receive and possess firearms and ammunition "issued for" governmental use), there is nothing about State Defendants' argument (or Section 52(a)(1) itself) that would shield such "on duty" use. *See* Mot. 4-5.

That leaves Plaintiffs' argument that *they* have never "provided an officer with [a] duty firearm … or a certification on police agency letterhead as would be required to exempt the individual from the Gun Control Act." Opp. 23.[4] Even if it had been properly alleged (and assuming it is true), this argument would not advance Plaintiffs' preemption theory, because conflict preemption exists only where state and federal law are so "diametrically opposed" that they "frustrate each others' goals," *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 132 (3d Cir. 2010)—either where compliance with both "is impossible," or where the state law "stands as an obstacle to" the federal law's "full purposes and objectives," *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 463 (3d Cir. 2021) (cleaned up). In other words, conflict preemption must stem from the state and federal regimes themselves, not from a party's own choices. For good reason: the alternative would allow parties to manufacture preemption simply by deciding to throw a wrench into an otherwise-harmonious regime. And that commonsense rule forecloses Plaintiffs' argument, because they nowhere dispute that they *choose* to make their officers purchase their own firearms and to withhold agency letterhead. In short, where federal law provides two pathways for Plaintiffs' officers to be lawfully armed (in their governmental capacities), *see* 18 U.S.C. § 925(a)(1); 27 C.F.R. §§ 478.134(a), .141(a), Plaintiffs cannot claim preemption simply because *they* have chosen not to follow either path.

---

[4] As noted, Plaintiffs do allege that they provide ammunition. Am. Compl. ¶¶ 43, 58.

Finally, were there any cause for doubt, the presumption against preemption would resolve it in Section 52(a)(1)'s favor. *See* Mot. 19. Plaintiffs concede that a presumption generally applies in preemption cases, Opp. 28, but resist its application here by suggesting (without citation) that, because this case involves "the regulation of a controlled substance particularly as it relates to firearm possession," it concerns "an area where state regulation has been wholly absent," Opp. 32. That argument fails on multiple bases. As an initial matter, it is inaccurate: States *also* regulate guns, drugs, and the intersection between the two, and have long done so. *E.g.*, N.J. Stat. Ann. § 2C:39-4.1(a) (possession of firearm in course of committing drug offense); *id.* § 2C:39-7(a), (b)(1) (possession of firearm by various prohibited persons, including persons who have been convicted of certain drug offenses). Further, it overlooks 18 U.S.C. § 927, which expressly *disclaims* any intent to preempt unless "there is a direct and positive conflict" between the Gun Control Act and state law. Finally, it entirely misunderstands this venerable presumption, which does not hinge on the narrow focus of the federal law asserted to have preemptive force, but rather on the broader remit of the state law claimed to be preempted. *E.g.*, *Farina v. Nokia Inc.*, 625 F.3d 97, 116-17 (3d Cir. 2010) (applying presumption to state-law actions regarding risks from radio-frequency radiation because such actions involved regulation of "the field of public health and welfare" generally). For instance, the presumption applies to "employment regulations" that "protect workers," even when

those protections operate in the context of the heavily federally regulated aviation industry. *See, e.g.*, *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 818 (3d Cir. 2019); *Gary v. Air Grp., Inc.*, 397 F.3d 183, 190 (3d Cir. 2005). In the same way, Section 52(a)(1) is an "employment regulation[]" that "protect[s] workers," and the presumption applies even though it operates, in this specific case, in the context of conduct that federal law *also* regulates. *See Bedoya*, 914 F.3d at 818.

In short, Plaintiffs cannot show any conflict between the Gun Control Act and Section 52(a)(1) in this case. Their suit can thus be dismissed without any further opportunity to amend. *See, e.g.*, *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007).

## III.   IN THE ALTERNATIVE, ABSTENTION IS PROPER.

While this suit should be dismissed outright, Plaintiffs' opposition fails to undermine the reasons that *Brillhart/Wilton* abstention would be appropriate in the alternative, given the ongoing state administrative proceedings that Plaintiffs concede involve "some overlap" with this case, Opp. 39. *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).

As the State Defendants explained in their moving brief, Mot. 31-33, to the extent this Court does not dismiss outright, the factors outlined in *Reifer v. Westport Insurance Corp.*, 751 F.3d 129, 146 (3d Cir. 2014), would weigh decidedly in favor of holding this matter in abeyance. The first-filed CSC matters, which are already pending at various stages of the State's administrative process, provide Plaintiffs an

adequate forum to raise their preemption argument—indeed, Plaintiffs have already raised it before the CSC, and the CSC has issued decisions in the *Mansour* and *Polanco* appeals, holding that the Gun Control Act does not preempt CREAMMA. *See* ECF No. 35-2 at 2-4 (*Mansour* CSC decision); ECF No. 35-2 at 19-20 (*Polanco* CSC decision). These CSC proceedings include an automatic right of appeal to the Appellate Division, N.J. Ct. R. 2:2-3(a)(2), followed by discretionary review by the New Jersey Supreme Court, N.J. Ct. R. 2:2-1(a), and then the U.S. Supreme Court, and thus adequately protect Plaintiffs' interest in advancing their federal preemption claim. *Cf. Gonzalez v. Waterfront Comm'n of the N.Y. Harbor*, 755 F.3d 176, 184 (3d Cir. 2014) (making this observation in the *Younger* context); *Zahl v. Harper*, 282 F.3d 204, 210 (3d Cir. 2002) (same). By contrast, allowing this suit to proceed while the state proceedings are ongoing would not only waste judicial resources, but would also disserve interests of comity—which are particularly strong where, as here, the state proceedings predate this federal suit and implicate important questions of state law. Mot. 32-33. Declining to abstain would provide Plaintiffs a second chance to prevail on the preemption theory they are already advancing in the state proceeding—an incentive for future gamesmanship by other parties.

Plaintiffs' responses misapprehend the state process. To begin, Plaintiffs do not dispute that *Brillhart/Wilton* abstention applies to suits that seek injunctive as well as declaratory relief (as Plaintiffs' suit does here), nor that administrative

13

proceedings like those implicated here constitute "state proceedings" for purposes of the doctrine. Instead, Plaintiffs claim that the federal preemption issue raised here cannot be resolved in the state proceedings. Opp. 37. That argument is misguided for several reasons. First, as Plaintiffs have elsewhere acknowledged, the CSC has already held in the parallel proceedings that no conflict preemption exists, *see* Am. Compl. ¶¶ 38-44, 50, 60, thus resolving the very issue Plaintiffs raise in this federal action. Second, any rulings Plaintiffs obtain via state proceedings need not "solely relate[]" to the individual officers. Opp. 37. Rather, the CSC proceedings lead next to the state courts, as New Jersey's Appellate Division has exclusive jurisdiction over final agency decisions on appeal. *See* N.J. Ct. R. 2:2-3(a)(2). Thus, should Plaintiffs avail themselves of their appellate rights in the state proceedings, they will be able to obtain a decision from the Appellate Division and then seek further review from the New Jersey Supreme Court. Nor, finally, does Plaintiffs' argument that "[o]nly a federal court" can resolve the preemption issue, Opp. 38, have merit. Binding precedent teaches that state courts and federal courts are presumptive coequals when it comes to resolving issues of federal law. *See Tafflin v. Levitt*, 493 U.S. 455, 458-59 (1990).[5] And after seeking review from the New Jersey Supreme

---

[5] Tellingly, Plaintiffs' reliance on *Velez Ortiz* shows that they are willing to accept state courts' competence. As noted, *Velez Ortiz* does not address the issue here and thus is inapposite on the merits, *see supra* at 7 n.3, but that does not mean that the Florida court was not *competent* to do so; it was, as the New Jersey courts are.

Court, Plaintiffs can then seek certiorari from the U.S. Supreme Court. *See id.* at 465 (noting that "any state court judgments misinterpreting federal criminal law would be subject to direct review by [the Supreme Court]"). Plaintiffs will have every chance to seek a "definitive answer," Opp. 39, through the state process.

Finally, Plaintiffs' claim that this is "not a case of forum shopping," Opp. 39, misses the point. Initially, their reasoning is faulty: they claim that there is no forum-shopping because the state process cannot (they argue) "provide an answer" on the federal preemption question, Opp. 39, but for all the reasons just given, the state process can provide an answer. Moreover, while the State Defendants do not question Plaintiffs' motivations, Plaintiffs do not dispute that allowing this action to proceed would risk encouraging the type of "procedural fencing," *Reifer*, 751 F.3d at 146, that the *Brillhart/Wilton* doctrine seeks to avoid, by giving Plaintiffs a second bite at the apple that other litigants would naturally be tempted to pursue.

In short, while this Court should simply dismiss this matter outright, in the event it does not do so, it should in the alternative hold the matter in abeyance while the first-filed state proceedings go forward.

## **CONCLUSION**

Plaintiffs' Amended Complaint should be dismissed with prejudice. In the alternative, this matter should be held in abeyance pending the ongoing state proceedings.

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:    /s/ Michael L. Zuckerman
Michael L. Zuckerman (No. 427282022)
Deputy Solicitor General

Date: April 1, 2024

## CERTIFICATE OF SERVICE

I certify that on April 1, 2024, I electronically filed the foregoing Reply in Support of State Defendants' Motion to Dismiss with the Clerk of the United States District Court for the District of New Jersey. Counsel for all parties are registered CM/ECF users and will be served via CM/ECF.

By:    /s/ Michael L. Zuckerman
Michael L. Zuckerman (No. 427282022)
Deputy Solicitor General

Date: April 1, 2024